# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HINA A. BAIG ) <br> ) <br>         **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **OFFICER CHRIS HARGIS,** ) <br> **in his individual capacity,** ) <br> ) <br>         **Defendant.** ) <br> ) | Case No. 13-2627-CM |

## MEMORANDUM AND ORDER

This matter is before the court on defendant's motion to dismiss for failure to state a claim (Doc. 7) and plaintiff's motion to stay proceedings (Doc. 13). Plaintiff brings this case pursuant to 42 U.S.C. § 1983, alleging that defendant violated her Fourth Amendment rights when he arrested and detained her. For the reasons stated below, the court grants defendant's motion in part and denies it as moot in part.

**I.  Background**

On June 26, 2013, plaintiff went to the Town Center Plaza Macy's store in Leawood, Kansas, to return some cosmetics she had previously purchased. Plaintiff, an Asian-American, was wearing a salmon/pink top with gray dots, gray dress slacks, and leather sandals. Plaintiff wore her black hair down and carried a large brown purse. Meanwhile, a Macy's Loss Prevention Officer ("LPO") called the Leawood Police Department ("LPD") to report suspicious activity by three suspects in the store, including two females and one male. One of the female suspects was described as being possibly Asian; carrying a plaid burgundy and/or Burberry purse; wearing a peach-colored shirt, jean shorts, and flip-flops; having black hair pulled into a ponytail; and wearing sunglasses on top of her head.

Shortly after plaintiff exited the store, defendant placed her under arrest. After determining that all three suspects were still in the store and that plaintiff was not involved, defendant released plaintiff. Plaintiff alleges that defendant's actions caused her to experience fear and apprehension, humiliation, embarrassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. In addition, plaintiff alleges that defendant acted with an evil motive or intent and that she is entitled to punitive or exemplary damages.

A more detailed recitation of the facts as alleged in plaintiff's complaint includes the following events:

- **6:08:09 p.m.** An LPO, identified as "Antwan," called the LPD to report suspicious activity.
- **6:08:13 p.m.** An LPD dispatcher[1] ("the dispatcher") told LPD officers that there were three subjects in the store, a male and two females[2], and that the male was taking tags off items for the two females.
- **6:08:37 p.m.** Defendant was dispatched to Macy's, along with several other officers.
- **6:08:55 p.m.** The dispatcher stated that a male was taking tags off of items for two females.
- **6:09:38 p.m.** The dispatcher described one of the female suspects as wearing a peach-colored shirt, shorts, and flip-flops.
- **6:12:05 p.m.** The dispatcher described this same female suspect as carrying a plaid burgundy purse.
- **6:15:51 p.m.** Defendant reported his arrival on the scene.
- **6:19:21 p.m.** The dispatcher reported that the "'other female is possibly Asian," and that her 'hair is pinned up in the back.'" (Doc. 1 at ¶ 27.)

---

[1] Plaintiff's complaint refers to two different dispatchers—Dispatchers 44230 and 44219. For purposes of this motion, it is immaterial which dispatcher said what, so the court refers to them collectively as "the dispatcher."

[2] The dispatcher originally stated that there were two males and one female. This statement was later corrected.

- **6:19:24 p.m.** The dispatcher stated that the Asian female was wearing jean shorts and stated at **6:19:38 p.m.** that she had sunglasses on the top of her head.

- **6:20:01 p.m.** The dispatcher reported that the male took off another sensor, handed it to the Asian female at **6:20:13 p.m.**, and at **6:20:21 p.m.** the Asian female hid the sensor in a pair of pants.

- **6:20:43 p.m.** The dispatcher stated that the Asian female was carrying a plaid Burberry purse.

- **6:24:13 p.m.** The dispatcher radioed that the Asian female was going into a fitting room and at **6:28:43 p.m.** the dispatcher stated that the LPO planned to wait until the females left the fitting room to make contact with the suspects.

- **6:29 p.m.** Plaintiff completed her return transaction and headed for her parked vehicle. (*Id*. at ¶¶ 7, 32.)

- **6:32:22 p.m.** The dispatcher reported that the Asian female just exited the fitting room and at **6:32:31 p.m.** reported that her purse was full of items.

- **6:33:10 p.m.** The dispatcher noted that the subjects were still on their phones and that at **6:34:35 p.m.** the Asian female and the male were by the south doors near a mannequin.

- **6:35:54 p.m.** The dispatcher radioed that the man "went into the fitting room with her." (*Id*. at ¶ 36.)

- At about **6:37 p.m.** Officer Ahring saw plaintiff exit the south doors of Macy's. Officer Ahring reported that he spotted a "female that appeared to be Asian" with "dark colored hair" and "wearing a peach colored shirt." (*Id*. at ¶ 37.) Plaintiff also alleges that Officer Ahring stated that "[b]ased on radio traffic and from his location he 'assumed this was one [of] the female suspects Macy's Loss Prevention was watching.'" (*Id*.)

- Defendant followed plaintiff on foot and Officer Ahring drove his unmarked patrol car in plaintiff's direction.

- Plaintiff reached her car, shut the door, and locked it.

- Officer Ahring pulled his car in behind plaintiff, preventing her from leaving. Defendant tried to open plaintiff's door but was unable to do so.

- At **6:37:17 p.m.**, the dispatcher reported that Officer Ahring requested a registration check on plaintiff's car.

- **6:37:28 p.m.** The dispatcher reported that Officer Ahring had contacted an Asian female outside the store and stated at **6:37:39 p.m.** that she was being detained.

- Plaintiff rolled down her window and told defendant that the door was locked. Defendant tried to reach through the window and unlock the door.

- Plaintiff later unlocked the door and defendant opened it, as plaintiff asked, "What's going on?" (*Id.* at ¶ 45.)

- Plaintiff got out of her car and defendant handcuffed her while she was holding her cell phone and receipts from the return transaction.

- Defendant told plaintiff she was under arrest and that they were waiting for her "partners" to leave the store. (*Id.* at ¶ 47.)

- **6:37:49 p.m.** The dispatcher relayed defendant's report[3] that plaintiff was being detained "out of sight" and "off her phone." (*Id.* at ¶ 48.) Plaintiff heard defendant make a radio report "that he had one of the suspects, indicating that she was Asian, wearing a peach top, gray pants, and flip-flops." (*Id.*)

- **6:38:46 p.m.** The dispatcher radioed that all three suspects remained in the store.

---

[3] Plaintiff does not indicate when defendant made his report.

- Plaintiff heard someone on the radio state that an Asian female with brown hair, wearing a peach top, jean shorts, flip-flops, and sunglasses on top of her head was still in the store.
- **6:39:12 p.m.** The dispatcher stated that the Asian female being detained (plaintiff) was not related.
- Defendant "finally told [p]laintiff that he was going to open the cuffs because the suspect was still inside. He double checked by radio and then uncuffed her." (*Id*. at ¶ 52.)
- Defendant then released plaintiff without an apology.
- Officer Ahring explained to plaintiff that they were looking for an Asian female with brown hair, and the officers returned plaintiff's cell phone and receipts.

## II. Legal Standard

The court will grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.* "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

## III. Discussion

### A. Fourteenth Amendment and Official Capacity Claims

Defendant argues that plaintiff's complaint alleges a violation of her Fourth and Fourteenth Amendment rights. Defendant contends that plaintiff's claim is properly analyzed under the Fourth Amendment and that plaintiff has failed to state any separate claim under the Fourteenth Amendment. In response, plaintiff confirms that she did not intend to state any separate Fourteenth Amendment claim. Because both parties agree that there is no separate Fourteenth Amendment claim here, the court denies this portion of defendant's motion as moot.

Similarly, defendant argues that plaintiff fails to state a claim against defendant in his official capacity, as plaintiff cites no official municipal policy, custom, or practice with which defendant was acting in conformity. Plaintiff agrees that she has not alleged a claim against defendant in his official capacity and states that "she does not object to dismissal of [defendant] in his *official* capacity . . . ." (Doc. 12 at 2.) Based on this, the court denies this portion of defendant's motion as moot.

### B. Matters Outside the Pleadings

Plaintiff's complaint references precise times and statements made by the LPD dispatcher, LPD officers, and the Macy's LPO before, during, and after plaintiff's arrest. Defendant maintains that these time stamps and statements originated from recordings and documents created by the LPD. Defendant attached several LPD records to his motion, and he argues that the court should consider these as documents "incorporated into the [c]omplaint by reference, [and] matters of which a court may take judicial notice." (Doc. 8 at 4 n.1 (citing *Tellabs, Inc. v. Makor, Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).)

Plaintiff argues that none of the documents submitted by defendant were attached to or incorporated into the complaint. Plaintiff contends that, as a result, these documents constitute matters outside the pleadings and the court must treat defendant's motion as one for summary judgment. Additionally, plaintiff asserts that defendant's arguments regarding the timing of certain statements

and actions create a genuine issue of material fact.  Finally, plaintiff concedes that defendant would be entitled to qualified immunity if his actions in mistakenly arresting plaintiff were reasonable.  But plaintiff contends that the reasonableness of defendant's actions in arresting plaintiff is a question of fact.  Plaintiff argues that the court should stay proceedings on defendant's motion and allow the parties to conduct discovery.

Under Federal Rule of Civil Procedure 12(d), if a party presents matters outside the pleadings on a motion to dismiss and the court does not exclude them, the court must treat the motion as one for summary judgment.  In her complaint, plaintiff cites to specific times when the events at issue took place.  (*See, e.g.*, Doc. 1 at ¶ 9 ("6:08:09 p.m.").)  Defendant argues that these timestamps came from a report created by the LPD called the "CAD Report."  (Doc. 8 at 5 n.2.)  Defendant also argues that the times in the complaint are misleading, as they reflect only when the LPD dispatcher typed the information, and not when the officers knew the information.

The court is not convinced that the CAD Report constitutes a matter outside the pleadings because the complaint clearly references the times as they are set forth in the CAD Report. Regardless, the court need not rely on the CAD Report or the other two exhibits defendant attached in ruling on defendant's motion to dismiss.  The court relies solely on the well-pleaded facts in plaintiff's complaint and ignores the exhibits submitted by defendant.  Thus, the court analyzes defendant's motion as a motion to dismiss, and not as a motion for summary judgment. *Hall v. Bellmon*, 935 F.2d 1106, 1111 n.4 (10th Cir. 1991) ("We will treat a dismissal as proper under Rule 12(b) even when the district court does not exclude materials outside the pleadings if the court does not refer to or rely on the outside materials in its order and if, as a matter of law, the complaint is insufficient.") (citations omitted); *Childers v. Indep. Sch. Dist. No. 1*, 676 F.2d 1338, 1340 (10th Cir. 1982) (holding that where the district court did not refer to or rely on matters outside the pleadings, the motion remains the

"functional equivalent of a motion to dismiss" (quoting *Smith v. Yellow Freight Sys., Inc.*, 536 F.2d 1320, 1322 (10th Cir. 1976))).

### C. Qualified Immunity

Government officials are entitled to qualified immunity under 42 U.S.C. § 1983 unless their conduct "violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A public official is entitled to qualified immunity unless the plaintiff can show that (1) the official violated the plaintiff's constitutional rights; and (2) the rights were clearly established when the violation occurred. *Id.* If the plaintiff fails to meet either prong, the analysis ends there, and the defendant retains qualified immunity. *Id.* The complaint must include specific allegations of fact to demonstrate that the official's actions were not objectively reasonable in light of clearly established law. *Schroeder*, 311 F. Supp. 2d at 1250; *Van Cleave v. City of Marysville, Kan.*, 185 F. Supp. 2d 1212, 1215 (D. Kan. 2002).

A right is "clearly established" if the parameters of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 614–15 (1999) (internal citation omitted). It is not necessary that the exact situation has been addressed; rather, it must be apparent "in the light of pre-existing law" that the actions are unlawful. *Id.* at 615 (internal citation omitted).

Plaintiff claims that defendant violated her Fourth Amendment right to be free from unreasonable seizure. Defendant is not entitled to qualified immunity if plaintiff can show that defendant violated her Fourth Amendment rights in arresting her without a warrant and that the contours of those rights were sufficiently clear that a reasonable official would recognize his acts were unlawful. *Wilson*, 526 U.S. at 614–15.

"'[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.'" *Painter v. City of Albuquerque*, 383 F. App'x 795, 798 (10th Cir. 2010) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). Although it is difficult to define, probable cause "'requires only a probability or substantial chance of criminal activity.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). Officers have probable cause if, "'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Id.* (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citations omitted)). Further, the fact that a person is acquitted following arrest does not impact the probable cause analysis. *Id.* (citation omitted).

Here, considering only the facts alleged in plaintiff's complaint, the court finds that defendant had probable cause in arresting plaintiff. As was the case in *Hill v. California*, defendant's arrest of plaintiff was a reasonable mistake given the information available to defendant at the time of the arrest. 401 U.S. 797, 802 (1971) (upholding a search incident to arrest when police mistakenly but reasonably believed that the person arrested in the defendant's home was the defendant and declining to disturb the California Supreme Court's finding that "'[w]hen the polic[e] have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest'"(quoting *People v. Hill*, 446 P.2d 521, 523 (Cal. 1968))).

The latest information defendant had about the Asian female suspect was that her purse was full of stolen items and that she was possibly in the fitting rooms at 6:35:54 p.m.[4] or near the south doors at 6:34:35 p.m. Then, about two or three minutes later, plaintiff exited the south doors of

---

4   It is unclear to which of the female suspects the dispatcher was referring in radioing that the man "went into the fitting room with **her**." (Doc. 1 at ¶ 36 (emphasis added).)

Macy's and defendant arrested her. Plaintiff argues that several discrepancies indicate that defendant's actions were unreasonable, pointing out that plaintiff was wearing a salmon/pink top (not a peach one), gray dress slacks (not jean shorts), leather sandals (not flip-flops), had her hair down (not up), did not have sunglasses on her head, and was carrying a large brown purse (not a plaid burgundy and/or Burberry one).

The court disagrees that these discrepancies establish defendant acted unreasonably. First, a reasonable officer is unlikely to discern the difference between a salmon/pink top and a peach top. Second, it is entirely reasonable that a prudent officer would not be aware of the unique characteristics of a plaid Burberry purse, and burgundy and brown are quite similar colors. Finally, it is reasonable to think that the suspect may have taken her hair down or removed the sunglasses from her head before walking out the door.

Defendant acknowledges that the major discrepancy between the suspect's description and plaintiff's appearance is that plaintiff was wearing gray pants, while the suspect was described as wearing jean shorts. But based on the timing of the events—as well as the other similarities between the suspect's description and plaintiff's appearance—this difference does not make defendant's arrest of plaintiff unreasonable. *See Jama v. City & Cnty. of Denver*, No. 08-cv-01693-MSK-KLM, 2010 WL 3615027, at *6 (D. Colo. Sept. 9, 2010) (noting that *Hill*, 401 U.S. 797, "provides that reasonable mistakes do *not* constitute constitutional violations, and demonstrates that an arrest based on similarities in descriptors is reasonable even in the face of some contrary evidence that the individual is the person described . . . ."). Although not determinative, the fact that Officer Ahring also reported that he saw a "female that appeared to be Asian" with "dark colored hair" "wearing a peach colored shirt" and that "[b]ased on the radio traffic and from his location he assumed this was one [of] the female suspects . . . ." also supports a finding that a reasonable person would believe that plaintiff was

the suspect. (Doc. 1 at ¶ 37.) Because defendant had probable cause to arrest plaintiff, the court finds that there was no constitutional violation.

Even if defendant did not have probable cause, plaintiff has not shown that defendant violated a clearly established right of plaintiff's. In her response, plaintiff focused mainly on her argument that defendant's motion should be treated as one for summary judgment and that the court should allow discovery. Unfortunately, plaintiff did not respond to the merits of defendant's motion and she thus failed to cite any Supreme Court case, Tenth Circuit case, or authority from other circuits identifying a clearly established right in this case. *Painter*, 383 F. App'x at 801. And *Hill* does not help plaintiff, as it "does not . . . clearly establish, nor even address, what degree of similarity between the suspect and the description in the warrant must be present to make an arrest reasonable . . . ." *Jama*, 2010 WL 3615027, at *6.

Further, plaintiff cannot rely solely on the broad proposition that the Fourth Amendment prohibits an arrest without probable cause. *See Painter*, 383 F. App'x at 802. Plaintiff has failed to meet her burden to point to case law "that makes it 'apparent' that a reasonable officer, confronted with the facts here, would have known that arresting [plaintiff] was unlawful." *Id*. at 801 (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted)).

Plaintiff argues that the court should stay proceedings on defendant's motion and allow discovery so plaintiff can "gather evidence to refute [defendant's] claim that his action was reasonable and that he is entitled to qualified immunity." (Doc. 12 at 5.) But this is unnecessary—the facts alleged by plaintiff in her complaint establish that defendant acted reasonably and that he is entitled to qualified immunity. Defendant's motion to dismiss (Doc. 7) is granted in part and denied in part as moot. In addition, plaintiff's motion to stay proceedings (Doc. 13) is denied.

As a final matter, the court notes plaintiff's allegation that defendant failed to apologize after he realized that plaintiff was not the suspect for whom he was searching. Although it certainly was not required by law, the court believes an apology should have been issued to plaintiff. The court can appreciate the uncomfortable and unsettling nature of this type of encounter with law enforcement. As stated above, defendant acted reasonably under the law based on the information available to him at the time he arrested plaintiff. But it seems even more reasonable to conclude that an apology is warranted in this type of situation, and the court urges defendant and other law enforcement officers to consider this in this situation and in the future.

**IT IS THEREFORE ORDERED** that defendant's Motion to Dismiss (Doc. 7) is granted in part and denied in part as moot.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Stay Proceedings on Motion to Dismiss as to Argument C with Suggestions in Support (Doc. 13) is denied.

The case is closed.

Dated this 9th day of May, 2014, at Kansas City, Kansas.

                                         s/ Carlos Murguia
                                         **CARLOS MURGUIA**
                                         **United States District Judge**